IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MIKEESE WYNN-THOMAS,<br><br>Plaintiff,<br><br>vs.<br><br>PATRICK DEMPSEY, Badge # 2122, in his official and individual capacities; ROBERT MARCUSSO, in his official and individual capacities; OMAHA POLICE DIVISION, a Nebraska Political Subdivision; and DOUGLAS COUNTY, NEBRASKA, a Nebraska Political Subdivision;<br><br>Defendants. | 8:21CV54<br><br>**MEMORANDUM AND ORDER** |

Plaintiff, a state prisoner, filed his Complaint on February 16, 2021, and has been granted leave to proceed in forma pauperis. Plaintiff paid the required initial partial filing fee on May 14, 2021. The court now conducts an initial review of Plaintiff's Complaint (Filing 1) pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.

I. STANDARDS ON INITIAL REVIEW

The court is required to conduct an initial review of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C.A. § 1915A(a). On such initial review, the court must dismiss the complaint if it: "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C.A. § 1915A(b). *See also* 28 U.S.C. § 1915(e)(2)(B) (requiring dismissal of in forma pauperis complaints "at any time" on the same grounds as § 1915A(b)).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

II. SUMMARY OF COMPLAINT

Plaintiff's Complaint indicates this is a civil rights action brought under 42 U.S.C. § 1983. Two basic claims are asserted. First, Plaintiff alleges that Detective Patrick Dempsey, of the "Omaha Police Division," conducted unlawful searches and seizures on March 25, 2018. Second, Plaintiff alleges that his public defender, Jack Mancusso, forged Plaintiff's signature on a Waiver of Appearance form, thereby interfering with Plaintiff's right of access to the courts. Dempsey and Mancusso are both sued in their individual and official capacities. The "Omaha Police Division" and Douglas County, Nebraska, are also named as Defendants. Plaintiff seeks an award of compensatory and punitive damages.

## III. DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* (quoting *United States v. Classic,* 313 U.S. 299, 326 (1941)).

### A. Public Defender Mancusso

"[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *West*, 487 U.S. at 50. Indeed, when a public defender represents an indigent defendant in a state criminal proceeding, he is "not acting on behalf of the State; he is the State's adversary." *Dodson*, 454 U.S. at 322 n.13. That is the situation presented here.

A § 1983 claim may be brought against a public defender who conspires with a state actor to deprive an individual of a federally-protected right, *see Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988), but the allegations of Plaintiff's Complaint fall far short of stating a plausible conspiracy claim involving Mancusso. *See Harris v. Craig*, No. 8:20CV17, 2020 WL 2914026, at *2 & n. 1 (D. Neb. June 3, 2020) (collecting cases).

Plaintiff's individual-capacity claims against Defendant Mancusso will be dismissed for failure to state a claim upon which relief may be granted.

### B. Douglas County

"A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *McKay v. City of St. Louis*, 960 F.3d 1094, 1102 (8th Cir. 2020) (quoting *Veatch v. Bartels Lutheran*

*Home*, 627 F.3d 1254, 1257 (8th Cir. 2010)). Thus, Plaintiff's official-capacity claims against Defendant Mancusso are, in effect, claims against Douglas County, Nebraska. Plaintiff has also sued Douglas County directly in this case by naming it as a Defendant.

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality (or other local government unit) can be liable under 42 U.S.C. § 1983 if an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. "To establish municipal liability, a plaintiff must first show that one of the municipality's officers violated [his] federal right." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007)). "If that element is satisfied, then a plaintiff must establish the requisite degree of fault on the part of the municipality and a causal link between municipal policy and the alleged violation." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388-92 (1989)).

To prevail on a claim alleged against Douglas County, Plaintiff must show that the constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016). "Official policy involves 'a deliberate choice to follow a course of action ... made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

> Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (quoting *Corwin*, 829 F.3d at 699-700).

A municipal liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability. *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018); *see City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."). Thus, to state a viable § 1983 claim for "failure to train" against a municipality, a plaintiff must "plead facts sufficient to show that (1) [the municipality's] [ ]training practices were inadequate; (2) [the municipality] was deliberately indifferent to the rights of others in adopting these training practices, and [the municipality's] failure to train was a result of deliberate and conscious choices it made; and (3) [the municipality's] alleged training deficiencies caused [Plaintiff's] constitutional deprivation." *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013).

No such facts are pleaded by Plaintiff's Complaint. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Because Plaintiff has not alleged any facts to suggest that the alleged violation of his constitutional rights was caused by a Douglas County policy or custom, or by the County's failure to train or supervise public defenders, Plaintiff has failed to state a *Monell* claim of municipal liability. Plaintiff's claims against Douglas County, and against Defendant Mancusso in his official capacity, will be dismissed for failure to state a claim upon which relief may be granted.

C. Omaha Police Division

The Omaha Police Division (or Department) is not a proper party, and must be dismissed from this action. *See Ketchum v. City of W. Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (city police department not suable juridical entity because it is department or subdivision of city government); *Fehderau v. Omaha Police Dep't*, No. 8:18CV592, 2019 WL 4858303, at *2 (D. Neb. Oct. 2, 2019) ("Plaintiff cannot maintain a § 1983 action against the Omaha Police Department because it is not a distinct legal entity amenable to suit under § 1983."); *Meyer v. Lincoln Police Dep't*, 347 F. Supp. 2d 706, 706 (D. Neb. 2004) (city police department not subject to suit because it is agency of the city, which is a political subdivision, and has no separate legal status under Nebraska law).

D. Detective Dempsey

Plaintiff has sued Detective Dempsey in his official capacity, as well as personally. The official-capacity claims are, in effect, claims against Dempsey's employer, the City of Omaha. Plaintiff does not claim his constitutional rights were violated by a municipal policy or custom, but does claim the City of Omaha is liable for failing to train or supervise Dempsey; specifically, Plaintiff alleges that with proper training Dempsey "should have known that Nebraska law required that the search of a probationer must be directed by a probation officer." (Filing 1, ¶ 18.) However, Plaintiff has not pleaded any facts to show that the City was deliberately indifferent to the rights of probationers, or that the alleged deficiency in Dempsey's training was the result of deliberate and conscious choices the City made. *See Ulrich*, 715 F.3d at 1061. The official-capacity claims against Dempsey therefore will be dismissed for failure to state a claim upon which relief may be granted.

With respect to the individual-capacity claims against Dempsey, however, the court concludes there are sufficient facts alleged to state plausible claims for relief under § 1983 for violations of Plaintiff's Fourth Amendment rights. Essentially, Plaintiff alleges that Dempsey and other police officers, who were part of OPD's gang unit, showed up at the residence of Plaintiff's mother, where Plaintiff was also residing, under the pretense of conducting a probation check. Plaintiff alleges his probation officer had no knowledge of this police action and did not authorize a

6

warrantless search of the premises. After conducting a search of Plaintiff's living quarters and finding nothing, Dempsey allegedly pretended to place a phone call to Plaintiff's mother and then told Plaintiff his mother had given consent for the police to search her bedroom. Police then searched the bedroom and claimed to have found a stolen handgun hidden in the back of the closet.[1] Plaintiff was placed under arrest and subsequently charged with possession of a stolen firearm and with violating the terms of his probation.

The court takes judicial notice that Plaintiff was convicted of the firearms charge on November 7, 2018, following a bench trial on stipulated facts in the District Court of Douglas County, Nebraska. The conviction was affirmed by the Nebraska Court of Appeals on August 19, 2019. Plaintiff then filed a motion for post-conviction relief, which was denied by the District Court on April 23, 2020. The Court of Appeals affirmed that ruling on May 10, 2021. *See State v. Wynn-Thomas*, Case No. CR18-1174, District Court of Douglas County, Nebraska. (Court record publicly available at https://www.nebraska.gov/justice.)

In the post-conviction proceeding, Plaintiff claimed ineffective assistance of counsel for failing to challenge the search of his mother's bedroom. The Nebraska Court of Appeals concluded the search was lawful, and held Plaintiff was not entitled to an evidentiary hearing based on a conclusory allegation that his mother's consent to the search was not sufficiently attenuated from the officers' illegal acts regarding the probation check. *See State v. Wynn-Thomas*, No. A-20-431, 2021 WL 1993461, at *3 (Neb. Ct. App. May 10, 2021). Plaintiff does not appear to have claimed, as he does now, that his mother did not consent to the search.

The Supreme Court has held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make

---

[1] Plaintiff's Complaint references two exhibits that purportedly are attached to the Complaint—a warrantless arrest affidavit signed by Dempsey and a counter-affidavit by Plaintiff's mother—but the filed pleading has no such attachments.

such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck v. Humphrey* 512 U.S. 477, 486-87 (1994) (footnote omitted).

> A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.*, at 487 (emphasis in original; footnotes omitted).

> For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful. In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which … does *not* encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned).

*Id.*, n. 7 (emphasis in original; citations omitted).

The Supreme Court was "careful in *Heck* to stress the importance of the term 'necessarily.'" *Nelson v. Campbell*, 541 U.S. 637, 647 (2004). "To hold otherwise would have cut off potentially valid damages actions as to which a plaintiff might never obtain favorable termination—suits that could otherwise have gone forward had the plaintiff not been convicted." *Id.*

Because an illegal search or arrest may be followed by a valid conviction, *Heck* does not generally bar § 1983 claims for Fourth Amendment search and seizure violations. *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (citing cases). *See Collins v. Bruns*, 195 F. App'x 533, 535 (8th Cir. 2006) (unpublished) ("The district court erred in concluding that the defective-search-warrant claim was categorically barred by *Heck,* as success on this claim would not necessarily imply the invalidity of [plaintiff's] conviction."); *Moore v. Inman*, 210 F. App'x 550, 551 (8th Cir. 2006) (unpublished) (preservice dismissal was not appropriate where it was not apparent on the record that success on the merits of plaintiff's Fourth Amendment claim for an unlawful vehicle search would necessarily imply the invalidity of any state court conviction); *Whitmore v. Harrington*, 204 F.3d 784, 784-85 (8th Cir. 2000) (per curiam) (district court erred in dismissing plaintiff's unlawful-investigative-stop claim as *Heck*-barred because success on this claim would not necessarily imply the invalidity of his later drug convictions); *Moore v. Sims*, 200 F.3d 1170, 1171-72 (8th Cir. 2000) ("If [a § 1983 plaintiff] successfully demonstrates that his initial seizure and detention by officers was without probable cause, such a result does not necessarily imply the invalidity of his drug-possession conviction.").

Plaintiff's Fourth Amendment claims against Defendant Dempsey, in his individual capacity, will be permitted to proceed to service of process because it is not apparent that such claims, if successful, will necessarily invalidate Plaintiff's conviction for possession of a stolen firearm.

Plaintiff must understand, however, that he cannot recover any damages for his conviction and imprisonment, because "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck*, 512 U.S. at 489-90 (1994) (footnote omitted). Also, with respect to Plaintiff's claims related to the search of his residence and the seizure of his handgun and person, he must be able to plead and prove an "actual, compensable injury" in order to recover compensatory damages. *Id.*, at 487 n. 7; *see Waters v. Madson*, 921 F.3d 725, 740 (8th Cir. 2019) (affirming district court's dismissal of § 1983 claim where plaintiffs failed to allege that any damages stemmed from unlawful search of their vehicle's trunk). Nominal damages (of $1.00) may be awarded without proof of actual injury, however. *See Waters*, 921 F.3d at 740 n. 8; *Garrett v. Clarke*, 147 F.3d 745, 747 (8th Cir. 1998)

("If [plaintiff] proves [his Fourth Amendment search] claim, he is entitled to a finding of liability and nominal damages even if he cannot prove actual damages."). With an appropriate showing, punitive damages may also be awarded.[2] *See Salitros v. Chrysler Corp.*, 306 F.3d 562, 574 (8th Cir. 2002) ("Our Circuit long ago rejected the notion that compensatory damages, as opposed to nominal damages, were prerequisite to an award of punitives.") (citing *Goodwin v. Circuit Court of St. Louis Cty.*, 729 F.2d 541, 548 (8th Cir. 1984) ("As to the claim that punitive damages may not be awarded unless actual damages are proved, this is not the law.").

### IV. CONCLUSION

Liberally construed, Plaintiff's Complaint states plausible claims for relief against Defendant Dempsey, in his individual capacity, for alleged violations of Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures.[3] In all other respects, however, the Complaint fails to state a claim upon which relief may be granted.

IT IS THEREFORE ORDERED:

1. Plaintiff's claims against Defendant ROBERT MARCUSSO, in his official and individual capacities, are dismissed without prejudice.

2. Plaintiff's claims against Defendant DOUGLAS COUNTY, NEBRASKA, are dismissed without prejudice.

3. Plaintiff's claims against Defendant OMAHA POLICE DIVISION are dismissed without prejudice.

---

[2] Punitive damages are appropriate in a § 1983 case when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. *Washington v. Denney*, 900 F.3d 549, 564 (8th Cir. 2018).

[3] The court cautions Plaintiff that this is only a preliminary determination based solely on the allegations in his Complaint. This is not a determination of the merits of Plaintiff's claims or potential defenses thereto.

4. Plaintiff's claims against Defendant PATRICK DEMPSEY, in his official capacity, are dismissed without prejudice.

5. This case will proceed to service of process only against Defendant PATRICK DEMPSEY, in his individual capacity.

6. The Clerk of the Court is directed to complete a summons form and a USM-285 form for Defendant PATRICK DEMPSEY, in his individual capacity, using the following address:

    Omaha Police Department
    505 S. 15th St, Omaha, NE 68102

7. The Clerk shall forward the completed forms to the Marshals Service,[4] together with a copy of Plaintiff's Complaint (Filing 1) and a copy of this Memorandum and Order, for service upon Defendant by certified mail or other authorized method. *See* Fed. R. Civ. P. 4(e); Neb. Rev. Stat. § 25-508.01(1).

8. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

---

[4] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory) ); Fed. R. Civ. P. 4(c)(3) (court must order that service be made by United States Marshal if plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915). *See, e.g.*, *Beyer v. Pulaski County Jail*, 589 Fed. App'x 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

9. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

10. The Clerk of the Court is directed to set a pro se case management deadline in this case with the following text: "September 2, 2021: Check for completion of service of summons."

11. Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

Dated this 4th day of June, 2021.

> BY THE COURT:
>
> *Richard G. Kopf*
> Richard G. Kopf
> Senior United States District Judge