IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MIKEESE WYNN-THOMAS,

             Plaintiff,

    vs.

PATRICK DEMPSEY, Badge # 2122,
in his individual capacity,

             Defendant.

**8:21CV54**

**MEMORANDUM
AND ORDER**

## I. INTRODUCTION

Plaintiff, Mikeese Wynn-Thomas, a state prisoner who appears pro se, alleges Defendant, Patrick Dempsey, an Omaha police officer who is sued in his individual capacity, conducted an unlawful search and seizure. This matter is now before the court on Defendant's motion for summary judgment based on qualified immunity (Filing 26). Upon careful review of the record, the court finds the motion should be granted and Plaintiff's action should be dismissed with prejudice.

## II. SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion."  Fed. R. Civ. P. 56(a).

In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party and gives that party "the benefit of all reasonable inferences that can be drawn from the record." *State Nat'l Ins. Co., Inc. v. Washington Int'l Ins. Co.*, 304 F. Supp. 3d 827, 831-32 (D. Neb. 2018) (quoting *Minnesota ex rel. N. Pac Ctr., Inc. v. BNSF Ry. Co.*, 686 F.3d 567, 571 (8th Cir.

2012)). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial. *See Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999).

"There is a genuine dispute when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (internal quotations and citations omitted). "A fact is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial responsibility of informing the court of the basis for the motion, and must identify those portions of the record which the moving party believes show the lack of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the moving party does so, the burden then shifts to the nonmoving party, who "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted. *Smith-Bunge v. Wisconsin Cent., Ltd.*, 946 F.3d 420, 424 (8th Cir. 2019).

The initial burden on a moving party "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) ("The moving party can satisfy its burden in either of two ways: it can produce evidence negating an essential element of the nonmoving party's case, or it can show that the nonmoving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial."); *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (moving party need not produce evidence showing "the absence of a genuine issue of material fact.").

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v.*

*Am. Greetings Corp.,* 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc*., 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042).

### III. QUALIFIED IMMUNITY

Qualified immunity shields officials from civil liability in a 42 U.S.C. §1983 action when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Morgan v. Robinson*, 920 F.3d 521 (8th Cir. 2019) (quoting *Pierson v. California*, 555 U.S. 223, 231 (2009)). Qualified immunity involves a two-step analysis: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Id.* at 523 (quoting *Nord v. Walsh Cty*., 757 F.3d 734, 738 (8th Cir. 2014)). Unless both of these questions are answered affirmatively, a defendant is entitled to qualified immunity. Moreover, courts are permitted to exercise their sound discretion in determining which of the two prongs should be addressed first. *Id.* (quoting *Nord*, 757 F.3d at 738-39).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The clearly established right should not be defined at a high level of generality, but instead must be particularized to the facts of the case. *Id.* There does not need to be a case directly on point, but existing precedent "must have placed the statutory or constitutional question beyond debate." *Id*. at 524 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Qualified immunity gives government officials "breathing room" to make reasonable but mistaken judgments, and protects "all but the plainly incompetent or those who knowingly violate the law." *Id*. (quoting *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam)).

"Qualified immunity is an affirmative defense for which the defendant carries the burden of proof. The plaintiff, however, must demonstrate that the law is clearly established." *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002); *see Creighton v.*

*Anderson*, 922 F.2d 443, 447 (8th Cir. 1990) ("Once the plaintiff has demonstrated that the law governing the plaintiffs' rights was clearly established at the time of the defendant's acts, the defendant has the burden of proof with respect to all other elements of the qualified immunity defense.").

## IV. SUMMARY JUDGMENT PROCEDURE

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

This court's local rules further specify that "[t]he moving party must include in the brief in support of the summary judgment motion a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(1)(b)(1) (underlining omitted).

In this case, Plaintiff has failed to make any response to Defendant's motion for summary judgment. "Failure to file an opposing brief is not considered a confession of a motion but precludes the opposing party from contesting the moving party's statement of facts." NECivR 7.1(b)(1)(C). Consequently, Defendant's statement of material facts (Filing 27, at 3-6), which finds support in the record, will be deemed admitted for purposes of deciding the motion for summary judgment. Although Plaintiff is proceeding pro se, he is bound by and must comply with all local and federal procedural rules. NEGenR 1.3(g).

4

## V. UNDISPUTED MATERIAL FACTS

The court finds there is no genuine dispute as to the following material facts which are properly referenced in separate numbered paragraphs in Defendant's brief in support of his motion for summary judgment:

1. On March 25, 2018, Defendant saw a Snapchat post showing Plaintiff posing with a handgun that was taken on or shortly before March 25, 2022. Defendant knew that possession of a handgun was a violation of the Plaintiff's probation.

2. Defendant contacted the Plaintiff's Probation Officer Christine Trosper, and she requested that Defendant and the Omaha Police North Gang Suppression Unit do a probation check and search of the Plaintiff where he was living at his mother's home at 6113 N. 24th Street in Omaha, Nebraska.

3. Defendant knocked on the door of 6113 N. 24th Street several times beginning at approximately 5:15 p.m. on March 25, 2018. Plaintiff did not come to the door for two minutes. During those two minutes, Defendant heard a loud thump and commotion, which sounded like someone upstairs in the residence trying to hide a heavy object, such as a gun.

4. Plaintiff was placed on probation for 24 months on November 1, 2017, after pleading guilty to carrying a concealed weapon.

5. The Order of Probation, dated November 1, 2017, ordered that Plaintiff shall, in pertinent part: (1) Obey all city ordinances, the laws of any state, and the laws of the United States … (2) Be subject to search by any law enforcement officer day or night. This includes, but not limited to the following; the probationer's person, personal or real property, living area or automobile. (3) Not possess, or have under the probationer's custody, care, or control, or have immediate access to, any firearm, ammunition, oleo capsicum pepper spray, or tear gas.

6. Plaintiff was on probation on March 25, 2018.

7. Defendant initially searched Plaintiff's bedroom, finding a plastic bag in a box containing trash that included marijuana shake of less than one gram.

8. Plaintiff called his mother Jamie Wynn on the house phone during the search. Ms. Wynn asked to speak to Defendant.

9. Defendant identified himself to Ms. Wynn, explained the situation, including that Plaintiff took a while to answer the door, and that they heard thuds upstairs, and that the police wished to search the rest of the upstairs rooms. Ms. Wynn identified herself and gave police voluntary verbal permission to search the other upstairs rooms.

10. During the search of Ms. Wynn's bedroom, Defendant found a handgun (Taurus model 24/7 Pro 9 mm, Serial No. TZL60174) on the floor of the bedroom closet.

11. After a record check, the gun was determined to be stolen.

12. Defendant called Ms. Wynn on his cellular phone and asked if the handgun found was hers. She denied the gun was hers and acknowledged again that she gave permission to search her bedroom.

13. Defendant and the other Omaha police officers took Plaintiff and his girlfriend, J'Lah Ray, who was also in the house, to Omaha Police Central Headquarters.

14. In an interview at Omaha Police Central Headquarters, after being read her rights and agreeing to talk to Defendant, Ms. Ray stated to Defendant that the handgun belonged to Plaintiff.

15. In an interview at Omaha Police Headquarters, after being read his rights and agreeing to talk to the Defendant, Plaintiff stated to Defendant that he purchased a handgun from a guy on the streets, that he knew he was not supposed to be in possession of a handgun, and that the handgun may be stolen.

16. Defendant served Requests for Admission upon Plaintiff on September 30, 2021. Plaintiff never responded to the Defendant's Requests for Admissions, and it has been more than 30 days since they were served. In those Requests (Exhibit 9, Filing 28-9), Plaintiff was asked to admit that: (1) he was arrested on August 22, 2017, for carrying a concealed weapon; (2) he pleaded guilty to the charge of

carrying a concealed weapon on November 1, 2017; (3) he was sentenced to 24 months' probation for conviction on the charge of carrying a concealed weapon on November 1, 2017; (4) he was on probation on March 25, 2018; (5) as part of his probation on March 25, 2018, Plaintiff was ordered to obey all city ordinances, the laws of any state, and the laws of the United States; (6) as part of his probation on March 25, 2018, Plaintiff was ordered to be subject to search by any law enforcement officer day or night; (7) as part of his probation on March 25, 2018, Plaintiff was ordered that his person, personal or real property, his living area, and his automobile were subject to search by any law enforcement officer day or night; (8) as part of his probation on March 25, 2018, Plaintiff was ordered to not possess, or have under his custody, care, or control, any firearm or ammunition; (9) as part of his probation on March 25, 2018, Plaintiff was ordered to not have immediate access to any firearm or ammunition; (10) a picture of Plaintiff, holding a firearm, was posted on social media on or about March 25, 2018; (11) Plaintiff's probation officer on March 25, 2018, was Probation Officer Christine Trosper; (12) Probation Officer Christine Trosper saw the picture of Plaintiff with a firearm posted on social medical on or about March 25, 2018; (13) Probation Officer Christine Trosper requested Omaha police officers, including Defendant, to search Plaintiff's real property/living quarters on or about March 25, 2018; (14) Defendant, along with other Omaha police officers, searched Plaintiff's real property/living quarters on March 25, 2018; (15) at the time of the search on March 25, 2018, Plaintiff had in his possession a stolen Taurus model 24/7 Pro 9mm handgun (Serial No. TZL60174); (16) at the time of the search on March 25, 2018, Plaintiff had immediate access to a stolen Taurus model 24/7 Pro 9mm handgun (Serial No. TZL60174); (17) when Defendant came to Plaintiff's door on March 25, 2018, Plaintiff attempted to hide the Taurus model 24/7 Pro 9mm handgun (Serial No. TZL60174) in Jamie Wynn's closet; (18) Plaintiff made a loud noise when attempting to hide the Taurus model 24/7 Pro 9mm handgun (Serial No. TZL60174) in Jamie Wynn's closet on March 25, 2018; (19) Defendant, along with other Omaha police officers, searched Plaintiff's living area, including his bedroom, on March 25, 2018; (20) Plaintiff had a plastic bag containing marijuana shake in a cardboard box containing trash in or near his bedroom at the time of the search; (21) Defendant called Jamie Wynn on the landline/house phone on March 25, 2018; (22) Defendant called Jamie Wynn on the landline/house phone on March 25, 2018 after searching Plaintiff's bedroom; (23) Defendant talked to Jamie Wynn on the landline/house phone on March 25, 2018;

(24) Defendant received permission from Jamie Wynn to search the other two bedrooms in the house on March 25, 2018; (25) Jamie Wynn's bedroom was legally searched on March 25, 2018; (26) a Taurus model 24/7 Pro 9mm handgun (Serial No. TZL60174) was found in the bedroom closet of Jamie Wynn's bedroom during the search on March 25, 2018; (27) the Taurus model 24/7 Pro 9mm handgun (Serial No. TZL60174) found in Jamie Wynn's closet on March 25, 2018 belonged to Plaintiff; (28) Plaintiff admitted to possession of the stolen Taurus model 24/7 Pro 9mm handgun (Serial No. TZL60174) during questioning by police on March 25, 2018; (29) Plaintiff agreed to talk with police prior to admitting possession of a stolen firearm on March 25, 2018; (30) Plaintiff was read a Miranda warning prior to agreeing to talk with police on March 25, 2018; (31) Plaintiff was charged with possession of a stolen firearm on March 27, 2018; (32) Plaintiff was convicted of possession of a stolen firearm on November 7, 2018; (33) Plaintiff has not been successful on any appeals of his November 7, 2018 conviction of possession of a stolen firearm; (34) no post-conviction relief has been granted to Plaintiff in regard to his November 7, 2018 conviction of possession of a stolen firearm; (35) Plaintiff's November 7, 2018 conviction of possession of a stolen firearm has not been invalidated; (36) Plaintiff suffered no damages as the result of any actions of Defendant; (37) Plaintiff has not lost any wages as a result of any actions of Defendant; and (38) Plaintiff failed to plead an actual, compensable injury in his Complaint and Jury Demand.

The court further finds that each of foregoing 38 requests for admission is deemed admitted and is conclusively established for purposes of this proceeding. *See* Fed. R. Civ. P. 36(a)(3) & (b) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.… A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended.").

## VI. ANALYSIS

In conducting an initial review of Plaintiff's Complaint (Filing 1), the court concluded there were sufficient facts alleged to state plausible claims for relief under 42 U.S.C. § 1983 for violations of Plaintiff's Fourth Amendment rights:

> Essentially, Plaintiff alleges that Dempsey and other police officers, who were part of OPD's gang unit, showed up at the residence of Plaintiff's mother, where Plaintiff was also residing, under the pretense of conducting a probation check. Plaintiff alleges his probation officer had no knowledge of this police action and did not authorize a warrantless search of the premises. After conducting a search of Plaintiff's living quarters and finding nothing, Dempsey allegedly pretended to place a phone call to Plaintiff's mother and then told Plaintiff his mother had given consent for the police to search her bedroom. Police then searched the bedroom and claimed to have found a stolen handgun hidden in the back of the closet. Plaintiff was placed under arrest and subsequently charged with possession of a stolen firearm and with violating the terms of his probation.

Memorandum and Order entered June 4, 2021 (Filing 11 at 6-7). Defendant has now proven with uncontroverted evidence that Plaintiff's allegations are false—i.e., the probation check was authorized and Plaintiff's mother consented to the search of her bedroom where the handgun was found.

In its memorandum opinion on initial review, the court also discussed the Supreme Court's holding in *Heck v. Humphrey* 512 U.S. 477 (1994), that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.,* at 486-87 (footnote omitted). "[A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.*, at 489-90 (footnote omitted).

Defendant argues that Plaintiff's claims are *Heck*-barred because there is no evidence his November 7, 2018 conviction for possession of a stolen firearm has been overturned, but "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction." *Id.*, n. 7. *See, e.g., Cooney v. Arkansas*, No. 21-3824, 2022 WL 288143, at *1 (8th Cir.

Feb. 1, 2022) (unpublished) (reversing district court's dismissal of plaintiff's § 1983 claims as *Heck*-barred because "his arguments that the searches lacked probable cause do not necessarily call into question the validity of his state court convictions"). Here, however, Plaintiff has admitted he suffered no damages as a result of any actions of Defendant.

The Eighth Circuit has stated that *Heck*-barred claims should be dismissed without prejudice so the plaintiff can refile if he can satisfy the favorable-termination requirement at some point. *See Thomas v. Eschen*, 928 F.3d 709, 713 (8th Cir. 2019) (citing *Schafer v. Moore*, 46 F.3d 43, 45 (8th Cir. 1995)). As will be discussed below, however, the court finds Plaintiff's claims should be dismissed *with prejudice* because, regardless of whether any damage claims have accrued, there was no Fourth Amendment violation. Indeed, Plaintiff has admitted to the lawfulness of the search.

The Fourth Amendment, which is made applicable to states by the Fourteenth Amendment, guarantees that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated …." U.S. Const. amend. IV. In establishing a violation of his Fourth Amendment rights under 42 U.S.C. §1983, a plaintiff must show that a search or seizure occurred and that it was unreasonable. *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989). A Fourth Amendment "seizure" requires an intentional act by a governmental actor. *McCoy v. City of Monticello*, 342 F.3d 842, 847 (8th Cir. 2003).

"Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *United States v. Vore,* 743 F.3d 1175, 1179 (8th Cir. 2014) (quoting *Katz v. United States,* 389 U.S. 347, 357 (1967)). In the Eighth Circuit, a plaintiff has the burden of proof in a § 1983 action claiming a Fourth Amendment violation for a warrantless search. *Der v. Connolly*, 666 F.3d 1120, 1127 (8th Cir. 2012). However, the defendant has the burden of producing evidence that an exception to the warrant requirement applies.

> As the Seventh Circuit explained, "[e]ven if a presumption of unreasonableness arises from the fact of a warrantless search [or entry], that does not serve in a civil case to shift 'the burden of proof in the sense of the risk of nonpersuasion.'" *Valance* [*v. Wisel,* 110 F.3d 1269,

10

1279 (7th Cir. 1997)] (quoting Fed. R. Evid. 301). Instead, such "presumption merely serves to impose on the defendant 'the burden of going forward with evidence to meet or rebut the presumption.'" *Id.* (quoting Fed. R. Evid. 301). A defendant may satisfy this burden of production by "produc[ing] evidence of consent or of some other recognized exception to the warrant requirement." *Id.* at 1278. "Yet once the defendant has done so, 'the ultimate risk of nonpersuasion must remain squarely on the plaintiff in accordance with established principles governing civil trials.'" *Id.* (quoting *Ruggiero* [*v. Krzeminski,* 928 F.2d 558, 563 (2d Cir. 1991))].

*Id.* at 1128.

In *United States v. Knights*, 534 U.S. 112, 121 (2001), the Supreme Court concluded that when a probationer is subject to a probationary search condition, the Fourth Amendment permits an officer to search pursuant to that condition without a warrant based upon that officer's reasonable suspicion that the probationer is violating his probation's terms. The Supreme Court reasoned that a warrantless search of a probationer's house requires no more than reasonable suspicion because a probationer has "significantly diminished privacy interests." *Id.* at 121-22. Five years later, the Supreme Court held that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee," at least where this is made a condition of parole and the parolee is "unambiguously" made aware of the condition. *Samson v. California*, 547 U.S. 843, 857 (2006); *see Lane v. Nading*, 927 F.3d 1018, 1023-24 (8th Cir. 2019). Defendant, however, does not argue that he was authorized to conduct a suspicionless search.

In this case, Defendant had reasonable suspicion Plaintiff was violating his probation's terms because, according to Defendant's affidavit (Exhibit 1, Filing 28-1), he personally "saw a post on social media, specifically Snapchat, of [Plaintiff] posing with a handgun before the search" and "knew that [Plaintiff] was not allowed to be in possession of a firearm per the terms of his probation." (*Ibid*., at ¶ 5.) While waiting outside the house for two minutes for Plaintiff to open the door, Defendant "heard a loud thud and commotion that seemed to be coming from the upstairs of the residence" and he "believed this to be an unknown party hiding or attempting to hide a heavy object in the house." (*Ibid*., at ¶ 7.) Suspecting that the handgun had been hidden upstairs, and not finding it in Plaintiff's bedroom, Defendant sought and

obtained permission from Plaintiff's mother by telephone to search the other two upstairs bedrooms. After the handgun was found in the back of the closet in Ms. Wynn's bedroom, Defendant phoned her back and she reaffirmed that consent had been given for the search; she also stated that the gun was not hers. (*Ibid.*, at ¶¶ 12-18.) These phone conversations were recorded on Defendant's bodycam, along with all other events during the probation check. (See Exhibit 3.)

"The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects. The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 181(1990). "Even if the third party lacked the requisite common authority, the Fourth Amendment is not violated if the police reasonably believed the consent was valid." *United States v. Hilliard*, 490 F.3d 635, 639 (2007) (citing *Rodriguez*, 497 U.S. at 188-89). "In such a case, the critical inquiry is whether the facts available to the police at the time the consent is given would warrant a person of reasonable caution to believe the consenting party had authority over the place to be searched." *Id.*

Ms. Wynn had authority to authorize the search, given that she is the renter of the house located at 6113 N. 24th Street. (Exhibit 1, Filing 28-1, at ¶ 4.) The only restriction put on the search was that the police officers not "tear up" the upstairs rooms. (Ibid., at ¶ 15.) The consent was given orally, which is entirely permissible. *See United States v. Magallon*, 984 F.3d 1263, 1281 (2021) ("Consent can be given orally or in writing."). The video evidence (Exhibit 3) also shows that the consent was given voluntarily. "A consent is voluntary if the consenting individual had "a reasonable appreciation of the nature and significance of his actions." *United States v. Saenz*, 474 F.3d 1132, 1136 (8th Cir. 2007) (quoting *United States v. Rambo,* 789 F.2d 1289, 1297 (8th Cir. 1986)). There is no question that a reasonably competent police officer in Defendant's position could conclude that Ms. Wynn had authority to consent to a search of the bedroom where the handgun was found, and that she gave such consent voluntarily. Consequently, there was no constitutional violation, and Defendant is entitled to qualified immunity without any need to consider whether the rights claimed by Plaintiff were clearly established.

## VII. CONCLUSION

The court finds there is no genuine dispute as to any material fact and Defendant is entitled to judgment as a matter of law.

IT IS THEREFORE ORDERED:

1. Defendant's motion for summary judgment (Filing 26) is granted, and Plaintiff's action is dismissed with prejudice.

2. Judgment shall be entered by separate document.

Dated this 20th day of July 2022.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge

13